UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00153-JHM
**ELECTRONICALLY FILED**

RUTH RAHM )
)
*Plaintiff* )
vs. )
)
TARGET CORPORATION )
)
*Defendant* )
)

**MEMORANDUM OF LAW IN SUPPORT OF TARGET'S MOTION FOR SUMMARY JUDGMENT**

Comes the Defendant, Target Corporation, (hereinafter "Target") by counsel, pursuant to Federal Rule 56, and hereby submits its Memorandum of Law in Support of its Motion for Summary Judgment.

## INTRODUCTION & FACTUAL BACKGROUND

This lawsuit involves Plaintiff's claim that she was injured by a shopping cart in the parking lot of the Target store in Owensboro, on the afternoon of June 12, 2015. The cart was left unattended just outside the exit doors and one minute later it was blown by wind in the direction of the Plaintiff as she walked to her car. The wind caused the cart to strike the Plaintiff's lower left leg. She did not hear it approaching from behind her and despite a warning from another customer who saw the cart approaching, the Plaintiff could not avoid it.

The basis of this Motion for Summary Judgment is that the Plaintiff cannot meet her burden to prove that Target breached its duty to exercise reasonable care, that it had actual or constructive notice of a hazard, or that Target created a hazardous condition. The cart was left

unattended for one minute and thirty one seconds, before it was blown by the wind in the Plaintiff's direction.

The Plaintiff was accompanied to the store that day by her sixteen year old granddaughter. See, Exhibit 1, Plaintiff's Deposition, p.8. She spent "an hour or two" inside the store. Id at p.10. It was very windy that day. Id at p.11-12. At 3:30 p.m., the Plaintiff and her granddaughter exited the store and walked diagonally to the right, toward the parking lot. This is evident from the video surveillance, attached hereto as Exhibit 2. The following is a timeline of the pertinent events as depicted in the video surveillance, and as described in the Affidavit attached hereto as Exhibit 3:

| **Time** | **Description** |
|---|---|
| 3:19:05 | The shadow of the cart appears in the top of the video frame |
| 3:19:55 | The shadow of the cart appears to move |
| 3:20:26 | The Plaintiff and her granddaughter exit the store |
| 3:20:30 | The Plaintiff pauses to look in her purse |
| 3:20:36 | The cart began moving in the direction of the Plaintiff |
| 3:20:42 | The Plaintiff continued toward the parking lot and exits the frame |
| 3:20:48 | The cart exits the frame |
| 3:21:18 | Another guest brings the cart into the store |

Two photographs of the front of the store are attached hereto as Exhibit 4. The Plaintiff testified that just before the cart struck her, another guest who was on his way into the store called out to

her to watch out for the cart. See, Exhibit 1, Plaintiff's Deposition, p.14. However, at the time, she thought he said "watch the cars". Id at pp.14, 19. She didn't see any cars so she continued walking toward her car and then the cart struck her from behind. Id at p. 20. The gentleman who had tried to warn her took the cart inside the store. Id at p.22. The Plaintiff walked to her car and her granddaughter drove her home. Id at p.24. Her ankle swelled and it was bruised. Id at pp.24-25. She propped it up at home and put ice on it. Id at p.25. On Monday, June 14, 2015, the Plaintiff went to work and she worked each day that week. Id at p.26. She did not seek medical attention until a couple of weeks later, in July, 2015, when she went to see her primary care physician, Dr. Gipe. Id at p.27. An x-ray of her left ankle revealed a closed fracture of the outer bone of her left ankle. Id at p.28. The Plaintiff was referred to an orthopedic surgeon, Dr. Wilson. His physical exam of her left ankle revealed normal range of motion and normal strength. He documented and told the Plaintiff that the fracture should heal on its own. Id at pp.29-30. She was not placed in a cast or given any assistive device. Id at p.50. The Plaintiff also complained of numbness and Dr. Wilson told her that it may take a year to a year and a half for that to subside. Id at p.30. On July 5, 2015, the Plaintiff reported the incident to store management. Id at p.31. The information she provided was documented on an incident report. See, Exhibit 5, attached hereto.

## LEGAL ARGUMENT

### I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that summary judgment is appropriate where there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See, Fed. R. Civ. P. 56; Federal Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, deposition, answers to interrogatories and admissions on file,

> together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In order to determine whether there exists a genuine issue of material fact, the Court must assess whether a factual dispute exists, whether the disputed fact is material to the outcome of the case and whether the disputed fact creates a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The motion for summary judgment may only be defeated if the responding party carries its burden of setting forth evidence sufficient to establish a factual issue which is both genuine and material to the issues. Id.

The United States Supreme Court has held that to defeat summary judgment, the opposing party must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no greater genuine issue for trial. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party's burden is a substantial one, to prove that a genuine issue of material fact remains for the fact-finder to resolve. A non-moving party must prove that by affidavit, deposition testimony, or otherwise. See, Millar v. Houghton, 115 F.3d 348, 350 (C.A. 5, 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff". American Road Service Co. v. Consolidated Rail Corp., 348 F.3d 565, 569 (C.A.6, 2003). "Speculation unsupported by facts in the record, is insufficient to create a genuine issue of material fact and falls short of what is required to survive summary judgment." See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II. Elements of Negligence Claim

In Kentucky, to recover damages under a negligence claim, a plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached its duty; and (3) the breach proximately caused the plaintiff's injuries. Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245 (Ky. 1992). In Deutsch v. Shein, 597 S.W.2d 141, 143-144 (Ky. 1980), the Kentucky Supreme Court adopted the substantial factor test for causation set forth in §41 of the Restatement (Second) of Torts. The Restatement states that the "actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm." Pathways, Inc. v. Hammons, 113 S.W.3d 85 (Ky. 2003). Comment (a) to §431 of the Restatement explains what is meant by "substantial factor":

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent…[T]his is necessary, but it is not of itself sufficient. The negligent must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using the word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes everyone of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Id. at 92.

Section 434 of the Restatement also addresses the issues of when legal causation is a question of law for the court and when it is a question for the jury. "The court has the duty to determine 'whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff.'" Id. quoting § 431 (1)(a).

The law in Kentucky and other states is well-settled, that a business owner's duty to its guests is to exercise reasonable care. It is not the absolute insurer of guests' safety while on the premises. Business owners are not strictly liable for any and all injuries that occur on their premises. See, Lanier v. Wal Mart Stores, Inc., 99 S.W.3d 431 (Ky. 2003); Bosler v. Steiden Stores, 178 S.W.2d 839 (Ky.App. 1944); Otto v. Phillips, 299 S.W.2d 100 (Ky.App. 1956); Dalton v. Steiden Stores, 126 S.W.155 (Ky.App. 1939).

In Lanier, with regard to the element of a business owner's duty, the Kentucky Supreme Court defined it, as "a duty to its customers to maintain its premises in a reasonably safe condition, and also has an affirmative duty to reasonably inspect the premises in order to discover and remedy potentially dangerous conditions or otherwise warn its customers of such conditions

Lanier v. Wal-Mart Stores, Inc., 99 S.W.3d 431 (Ky. 2003).

This case is unlike other premises liability cases which involve the presence of obvious hazardous conditions such as the presence of a foreign substance on the floor of a store, which could cause a guest to fall and injure themselves. It is also not like other cases where guests are injured by carts being pushed by employees or by other customers. The cause of this incident was an act of nature whereby the cart, having been left unattended one minute and thirty one seconds earlier, was then blown by the wind into the Plaintiff's left ankle.

While there are no reported Kentucky cases with facts similar to this case, there is a Tennessee Court of Appeals case involving a Plaintiff who was injured when a shopping cart was blown by wind in the parking lot of a Target store in Memphis, and it struck the Plaintiff, causing injury. See, Smytka v. Dayton-Hudson Corp., 2000 WL 34411145 (Tenn.Ct.App.). The trial court granted Target's Motion for Summary Judgment, finding that Target did not breach the duty it owed

to the Plaintiff. The Plaintiff appealed and the Tennessee Court of Appeals affirmed the decision finding:

> Target cannot force customers to place their shopping carts in the cart corrals, nor is it practical to believe that Target can keep the parking lot constantly free of shopping carts. Likewise, Target cannot control the weather. This combination of factors practically guarantees that shopping carts will roll free during episodes of inclement weather. There is no proof that Target was negligent in its removal of carts on the day the injury occurred. To find Target negligent under the circumstances would be to impose strict liability. However, a merchant is not the absolute insurer of the safety of its customers. *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn.Ct.App.1980). There must be a showing that the merchant breached the duty of reasonable care under the specific circumstances. In the present case, there is no such evidence. The mere fact that carts periodically rolled free in the parking lot does not mandate a decision to the contrary.
>
> We conclude, as did the trial court, that reasonable minds could not differ as to the question of whether Target breached its duty of care to Ms. Smytka. As stated previously, any contrary conclusion would be tantamount to imposing strict liability, thereby making Target the absolute insurer of its customer's safety.

Smytka v. Dayton-Hudson Corp., 2000 WL 34411145 at *3 (Tenn.Ct.App.).

Target employs cart attendants whose primary responsibility is the collection and retrieval of shopping carts from the parking lot. Prior to the Plaintiff's exit from the store, the video surveillance shows the cart attendant bringing carts into the store from the parking lot at 3:03:52, 3:06:15, and 3:11:15. See, Exhibit 2. We also know from the video surveillance that less than eight minutes later, the cart that struck the Plaintiff was left unattended, (at 3:19:05), and that the Plaintiff exited the store one minute and twenty one seconds later, at 3:20:26. One minute and twenty one seconds is insufficient time for Target to have noticed of the presence of the cart, and the presence of a cart near the doors of the store is not a hazardous condition. Furthermore, there is a question about the foreseeability of a random act of nature, which caused an unattended shopping cart to strike a person as she walked to her car. The Plaintiff agreed that despite being a frequent visitor to the store since it first opened, visiting there once or twice a week, she has never seen carts being

blown by wind in the parking lot. She testified as follows:

> **Q: But there are locations in the parking lot where carts are collected?**
>
> A: Correct. Three or four of them.
>
> **Q: And I take it you've seen, with all of your visits to the Target store there, sometimes people put them back in those locations where they're supposed to be?**
>
> A: They do. They do.
>
> **Q: Or they bring them up to the store doors. But then there are occasions when people just leave them wherever they - -**
>
> A: Just leave them.
>
> **Q: And they leave them, it could be next to their car or just the next nearest spot that they chose to leave it; is that fair?**
>
> A: Well yeah, they do that everywhere.
>
> **Q: So Target is not different from other stores in that regard?**
>
> A: No.

<u>See</u>, Exhibit 1, Plaintiff's Deposition, p.36.

She went on to say:

> **Q: Okay. Have you, either before the incident or since the incident, seen carts at the Target store being blown by wind?**
>
> A: No.
>
> **Q: That's the first and only time?**
>
> A: Yes.
>
> Id at pp.38-39.
>
> **Q: And given that this was the one and only time that you had a cart or seen a cart blow in the parking lot there, I take it then that you didn't anticipate something like that could happen on a windy day?**
>
> No. I did not anticipate this at all.

Id at p.53.

Under Kentucky law, where there is sufficient proof to conclude that a hazardous condition was created by landowner or possessor, a slip-and-fall plaintiff does not need to show that defendant knew of danger in order to establish breach of duty of reasonable care; where, however, where there is insufficient proof that a hazardous condition was created as a result of the defendant's actions,

plaintiff must show that landowner or possessor was either actually or constructively notified of condition. See, Heinrich v. Kroger, 2001 WL 69212 (C.A.6 2001). In the case at bar, there is no proof to show that Target created a hazardous condition. Without this proof, to establish liability, the Plaintiff is required to show that Target knew of, or in the exercise of reasonable care should have known of the cart's unattended presence. See, Kroger v. Spillman, 130 S.W.2d 786, 787 (Ky.1939). The Plaintiff could do this by proving that the alleged hazardous condition was present for a sufficient period of time such that it should have been discovered and remedied. See, Cumberland College v. Gaines, 432 S.W.2d 650, 652 (Ky.1968); Bosler v. Steiden Stores, 178 S.W.2d 839 (Ky.App. 1944). Mrs. Rahm testified that she had no idea how long the cart might have been there:

> **Q: Okay. And you don't know how long that cart was at the location from where it was blown?**
>
> A: No, I do not.

See, Exhibit 4, Plaintiff's Deposition, p.52

The video surveillance shows that it was not present for a sufficient period of time prior to it striking the Plaintiff, for Target to have discovered it, and it is questionable whether an unattended shopping cart is a hazard. The Plaintiff cannot meet her burden to prove that the cart was present for an unreasonable amount of time, and therefore, she cannot prove actual or constructive notice. Furthermore, the Plaintiff has no proof to support an assertion that Target breached its duty to exercise reasonable care. The unfortunate fact that an injury occurred on Target's premises is not sufficient to get to a jury.

## CONCLUSION

Based on the foregoing, the Plaintiff does not have sufficient proof to get to a jury. There is no genuine issue of material fact, and Target hereby respectfully requests that this Court grant its Motion for Summary Judgment.

Respectfully submitted,

/s/ Noel R. Halpin
Richard P. Schiller
Noel R. Halpin
SCHILLER BARNES MALONEY, PLLC
1600 One Riverfront Plaza
401 West Main Street
Louisville, KY 40202
(502) 583-4777
(502) 583-4780 (fax)
nhalpin@sobmlegal.com
***Counsel for Defendant,***
***Target Corporation***

**CERTIFICATE OF SERVICE**

It is hereby certified that on the 31st day of October, 2016, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Michael D. Ward
806 Poplar Street
P.O. Box 83
Benton, KY 42025
Telephone: (270) 527-0026
***Counsel for Plaintiff***

/s/ Noel R. Halpin
SCHILLER BARNES MALONEY, PLLC